**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1064-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAHMIL JASPER, a/k/a
JAHMIL L. JASPER,

    Defendant-Appellant.

_____

Submitted May 31, 2022 – Decided July 19, 2022

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 19-03-0841.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Caitlinn Raimo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Jahmil Jasper was convicted of assaulting a woman during a road rage incident in the midafternoon of December 8, 2018. Following the jury's guilty verdict on charges of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7), and disorderly conduct, N.J.S.A. 2C:33-2(b), as a lesser included offense of third-degree terroristic threats, N.J.S.A. 2C:12-3(b), defendant was sentenced to an aggregate five-year probationary term. The judge imposed several conditions, including a 364-day jail term.

Over the course of two trial days, the State presented the testimony of five witnesses, including the victim, Elizabeth Jenkinson, and the emergency room physician who treated her, Dr. Frederick Waldron. Surveillance video captured defendant kicking Jenkinson during the incident. Defendant testified in his own defense.

Jenkinson testified that just prior to the altercation her fiancé dropped her off in front of a laundromat on Irvington Avenue. Alighting from the car slowly in view of her recent spinal surgery, Jenkinson heard car horns and a man hurling expletives from a dark gray Audi. Defendant exited the Audi; Jenkinson threw a KFC box over his car; and they "had words." Defendant threatened Jenkinson but re-entered his car when Jenkinson advised she had made note of his license plate. Jenkinson walked toward the 7-Eleven to find her fiancé but noticed

2

defendant's car had stopped near her. Again, defendant verbally threatened Jenkinson, then got out of his car and punched and kicked her.

Defendant testified to a different version of events. He claimed he got out of his car the second time because Jenkinson spit on him and his car. Jenkinson continued to verbally assault him, although defendant did not insult or swear at her. He stated she was "scrambling at [his] feet. So . . . [he] kicked her hands off" and "ran back to [his] car."

Later that afternoon, Jenkinson was treated for her injuries at Newark Beth Israel Medical Center. She told the medical staff she believed she had passed out. Jenkinson sustained a hematoma to her forehead. According to Waldron, the hematoma meant "she had sustained significant injury," but the injury was not life-threatening.

Defendant now appeals, arguing:

<u>POINT I</u>

THE COURT ERRED IN ALLOWING A DOCTOR TO GIVE EXPERT TESTIMONY WITHOUT BEING QUALIFIED AS AN EXPERT, AND FURTHER ERRED IN ALLOWING THE SAME DOCTOR TO TESTIFY TO THE ULTIMATE ISSUE.
(Not Raised Below)

3

THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM, 364 DAYS IN JAIL AND A FIVE-YEAR TERM OF PROBATION FOR A THIRD-DEGREE OFFENSE, BECAUSE THE AGGRAVATING FACTORS WERE NOT SUPPORTED BY THE RECORD.

We reject these contentions and affirm.

I.

For the first time on appeal, defendant contends Dr. Waldron impermissibly opined about the ultimate issue in the case without the State moving to qualify him as an expert witness. To support his contention, defendant cites two portions of Waldron's testimony: (1) Jenkinson's account of her injuries, i.e., that "punches and kicks to the head and body could cause someone to pass out"; and (2) "a hematoma was a 'significant' injury that could have caused loss of consciousness." Because defendant did not object to the admission of Dr. Waldron's testimony, we review his newly-minted contention through the prism of the plain error standard. R. 2:10-2.

Pursuant to N.J.R.E. 701, a trial court may admit the testimony of a lay witness in the form of opinion if that testimony "(a) is rationally based on the witness' perception; and (b) will assist in understanding the witness' testimony or determining a fact in issue." Although a treating physician may possess the

necessary qualifications to testify as an expert, N.J.R.E. 701 allows the physician to offer medical testimony regarding his or her diagnosis and treatment of a patient, without qualifying as an expert. Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 576-78 (2016). Courts distinguish between treating physicians and other medical experts because treating physicians are not obtained in anticipation of litigation. Stigliano v. Connaught Lab., Inc., 140 N.J. 305, 313-14 (1995) ("Although . . . treating doctors are doubtless 'experts,' . . . they are more accurately fact witnesses.").

To the extent a particular matter in issue requires medical testimony beyond testimony about diagnosis and treatment of a patient, expert testimony may be required. Delvecchio, 224 N.J. at 579. Accordingly, where a party seeks to have their physician testify to topics beyond the scope of diagnosis and treatment, the physician's testimony must conform to the rules regarding expert testimony pursuant to N.J.R.E. 702 and 703. Ibid.

Moreover, under N.J.R.E. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." See also State v. Hyman, 451 N.J. Super. 429, 444 (App. Div. 2017) (quoting N.J.R.E. 704) ("Our evidence rules provide that 'otherwise admissible' expert testimony 'is not objectionable

because it embraces an ultimate issue to be decided by the trier of fact.'").  In the context of criminal trials, however, "experts may not, in the guise of offering opinions, usurp the jury's function," nor may they opine "in a manner that otherwise invades the province of the jury to decide the ultimate question."  State v. McLean, 205 N.J. 438, 453 (2011).

In this case, Dr. Waldron's testimony was limited to his diagnosis and treatment of the victim.  Dr. Waldron testified about Jenkinson's condition upon arrival, her injuries, and her treatment plan.  He recalled Jenkinson presented at the midpoint acuity level, which he defined as "not in danger of death.  There was no organ- or limb-threatening injury, but she had the potential of having serious injury."  Dr. Waldron described the tests performed, including three CT scans and that he recommended pain medication and a follow-up evaluation.

Further, Dr. Waldron explained the possible side effects of an epidural hematoma, which could include the brief loss of consciousness, in response to whether he had concerns about Jenkinson's head injury over time.  Notably, the doctor stated he was uncertain as to whether Jenkinson had lost consciousness or sustained a concussion.  Testimony that physicians observe head trauma patients over time because of the risk of loss of consciousness is consistent with

A-1064-19

a patient's treatment plan. Dr. Waldron's explanation provided context for his treatment and diagnosis of the victim. See Delvecchio, 224 N.J. at 576-78.

Nor are we convinced Dr. Waldron impermissibly testified to the ultimate issue by opining Jenkinson's hematoma indicated she had "sustained significant injury." Pursuant to N.J.S.A. 2C:11-1(d), "significant bodily injury" is defined as "bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any of the five senses." As stated, Dr. Waldron could not opine as to whether Jenkinson had suffered loss of consciousness. Thus, we discern no error in his fleeting reference to the term, "significant injury."

Moreover, the indictment charged defendant with third-degree aggravated assault, N.J.S.A. 2C:12-1(7), which included the "attempt[] to cause . . . significant bodily injury" to the victim. Ample evidence was presented through the victim's description of the assault that defendant attempted to cause significant bodily injury, without expert testimony. We conclude the court did not commit any error, let alone plain error, by admitting Dr. Waldron's testimony.

A-1064-19

II.

Defendant contends his five-year probationary sentence, conditioned upon a 364-day jail term is excessive because the court's balancing of aggravating and mitigating factors did not support "the maximum periods of jail and probation" for a third-degree offense. He further claims the "vanishingly thin" injury suffered by the victim did not support a sentence at "[t]he high end of the sentencing range." To support his argument, defendant challenges the court's assessment that aggravating factors two, N.J.S.A. 2C:44-1(a)(2) (gravity and severity of harm), three, N.J.S.A. 2C:44-1(a)(3) (risk of re-offense), and nine, N.J.S.A. 2C:44-1(a)(9) (deterrence), preponderated over mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (no prior criminal history or delinquency). We are unpersuaded.

We review a sentence under an abuse of discretion standard. State v. Miller, 237 N.J. 15, 28 (2019). We "consider whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether 'the factfinder [has] appl[ied] correct legal principles in exercising its discretion.'" State v. Blackmon, 202 N.J. 283, 297 (2010) (alterations in original) (quoting State v. Roth, 95 N.J. 334, 363 (1984)). Nor do we substitute our judgment for that of the sentencing court. State v. Fuentes, 217 N.J. 57, 70

(2014). A sentence will be affirmed unless it violated the sentencing guidelines, relied on aggravating or mitigating factors not based on competent and credible evidence in the record, or applied the guidelines in such a manner as to "make[] the sentence clearly unreasonable so as to shock the judicial conscience." Miller, 237 N.J. at 28 (quoting Fuentes, 217 N.J. at 70).

When sentencing a defendant, a court must identify and balance the aggravating and mitigating factors pursuant to N.J.S.A. 2C:44-1(a) and (b) and explain the factual basis underpinning its findings. Fuentes, 217 N.J. at 72-73. "It is sufficient that the trial court provides reasons for imposing its sentence that reveal the court's consideration of all applicable mitigating factors" in reaching its decision. State v. Bieniek, 200 N.J. 601, 609 (2010). "After balancing the factors, the trial court may impose a term within the permissible range for the offense." Id. at 608.

Although defendant was sentenced to the maximum jail term as a condition of the lengthiest period of probation, he was not sentenced at the high end of the third-degree sentencing range. See N.J.S.A. 2C:43-6 (setting the range for a third-degree crime at three to five years' imprisonment); see also N.J.S.A. 2C:45-2(a) (providing the court may impose a probationary period

between one and five years).  Moreover, the court's assessment of aggravating factors was supported by the record.

Regarding aggravating factor two, the court noted the victim was an older woman, recovering from surgery.  Referencing the video, the court found during the assault, defendant was "literally swinging [his] leg back and forth and kicking her so hard" that "it was a disturbing video to watch."[1]  Aggravating factor two involves an assessment of "[t]he gravity and seriousness of harm inflicted on the victim," taking into account the defendant's knowledge "that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance . . . ."  N.J.S.A. 2C:44-1(a)(2).  Based on the evidence adduced at trial, we discern no error in the court's finding of aggravating factor two.

We have warned against the use of a defendant's refusal to admit guilt to increase a sentence.  See State v. Marks, 201 N.J. Super. 514, 540 (App. Div. 1985) (noting our "view that a defendant's refusal to acknowledge guilt following a conviction is generally not a germane factor in the sentencing

---

[1]  The surveillance video was not provided on appeal.  Defendant does not dispute the court's description of the footage.

decision"). However, the Court has recognized a sentencing court may consider the defendant's failure to take responsibility in support of aggravating factor three. State v. Carey 168 N.J. 413, 426-27 (2001) (upholding the court's finding of aggravating factor three where the defendant "expresse[d] remorse, but [did] not directly accept responsibility for the [car] crash or admit that he ha[d] a problem of drinking and driving").

Similarly, in the present case, defendant briefly stated he "d[id]n't condone [his] . . . actions . . . on that day" and "fe[lt] bad that it even happened, but [he] just need[ed] the court to have mercy on [his] kids." The court was unpersuaded, finding aggravating factor three applied because defendant failed to state he was "sorry for what [he] did to the victim." Turning to aggravating factor nine, the court found the need for general and specific deterrence in this stranger-to-stranger crime because defendant's actions during the road rage incident were "not acceptable behavior in this society." The record supports the application of aggravating factors three and nine.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1064-19