**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4011-16T3

JAMILA M. PERRY and
MICHAEL CHERRY, her spouse,

        Plaintiff-Appellant,

v.

LONGINA PEREZ,

        Defendant-Respondent.

_____

        Argued September 17, 2018 – Decided September 25, 2018

        Before Judges Haas, Sumners and Mitterhoff.

        On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5151-13.

        Lisa A. Lehrer argued the cause for appellant (Davis, Saperstein & Salomon, PC, attorneys; Lisa A. Lehrer, on the brief).

        Thomas A. Morrone argued the cause for respondent (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Thomas A. Morrone, of counsel and on the brief; Richard W. Fogarty, on the brief).

PER CURIAM

In this personal injury case, plaintiff Jamila Perry appeals from a judgment of no cause of action entered against her, and in favor of defendant Longina Perez, following a jury trial. Plaintiff also challenges the trial judge's subsequent denial of her motion for a new trial and additur. We affirm.

On August 26, 2011, plaintiff and defendant were involved in a motor vehicle accident that took place in a parking lot. Plaintiff was sitting in the driver's seat of her mother's parked car when defendant pulled into the space to the left of her. As defendant did so, the passenger side of her car scraped against the driver's side of plaintiff's vehicle. Plaintiff admitted her "body did not come into contact with anything inside of the car", and that her "car was not pushed into anything or pushed out of the parking space[.]" She admitted telling Officer Michael Wilson, who came to investigate the incident, that she was not injured and did not need an ambulance.

Defendant testified that the parking lot was crowded, and she was looking for an open spot while driving very slowly. As she was pulling into the space next to plaintiff's car, her foot was not on the gas pedal. After she parked, defendant heard plaintiff yelling out of her open window and realized she must have touched plaintiff's car. Defendant stated that she did not feel any impact

A-4011-16T3

at all between the vehicles. There was no damage to defendant's car, and there was only a white line of paint from defendant's car on plaintiff's vehicle.

Officer Wilson reported to the scene, interviewed plaintiff and defendant, and prepared a written report. At trial, Officer Wilson noted the parties' similar accounts that the accident happened when defendant attempted to park and her car made contact with the driver's side of plaintiff's vehicle. Judge Gregg Padovano, who presided at the trial, overruled plaintiff's objection that this testimony was an improper expert opinion. Officer Wilson confirmed that neither party reported any injuries and, therefore, an ambulance was not summoned. Both plaintiff and defendant drove their vehicles from the scene.

Plaintiff later alleged that, as a result of the accident, she sustained injuries to her neck, shoulder, and back, and had to undergo surgery, multiple injections, physical therapy treatments, chiropractic treatment, acupuncture, and continuing pain management treatment. However, she conceded that she had been involved in a prior motor vehicle accident in 2009, where a car attempting to parallel park in front of her backed into her vehicle, resulting in serious injuries to her head, neck, and back. Specifically, plaintiff alleged that she sustained "chronic back/neck pain, herniated disc, bulging discs" in the 2009 accident. She was still being treated for those injuries at the time of the 2011 accident.

A-4011-16T3

As for the 2011 accident, plaintiff testified she went to see her treating chiropractor, Dr. Kenneth Ermann, shortly after the incident for her alleged shoulder complaints, and then did not visit him again until approximately sixteen months after the accident. Although Judge Padovano did not permit plaintiff to allege at trial that she did not go to the doctor because of problems with the cost of obtaining insurance or with her carrier approving certain medical procedures, plaintiff was able to explain that any gaps in treatment following the 2011 accident were due to taking on a new job, her pregnancies and the loss of pregnancies, and child care issues.

During her testimony, plaintiff's attorney showed her a number of color photographs taken of her car after the accident. Plaintiff alleged that although the photographs showed some of the damage sustained in the accident, they did not fully depict the damage because of a "glare" on the photographs. On cross-examination, defense counsel produced black and white versions of the same photographs, which had been shown to plaintiff at her deposition. At the deposition, plaintiff had authenticated some of these photographs as depicting what the car looked like following the accident. However, plaintiff was now unable to do so.

A-4011-16T3

Following her testimony, Judge Padovano and the attorneys reviewed the photographs against plaintiff's prior admissions at the deposition. The judge then admitted the photographs plaintiff had authenticated at the deposition.

At trial, plaintiff presented the video testimony of two medical experts, Dr. Arthur Rothman and Dr. Michael Meese. She has not provided us with a transcript of that testimony, but there is no dispute that both experts opined that plaintiff suffered injuries as the result of the 2011 accident.

Dr. Ermann also testified on plaintiff's behalf as her treating chiropractor. Judge Padovano denied plaintiff's request to permit Dr. Ermann to testify as an expert on the issues of causation and permanency because she failed to provide the defense with an expert report from Dr. Ermann prior to trial. Nevertheless, Dr. Ermann was allowed to testify that plaintiff suffered injuries to her shoulder in the 2011 accident that were different from those she sustained in 2009.

Defendant called two experts at trial, Aman Gupta, Ph.D. and Dr. Alan Miller. Dr. Gupta was qualified without objection as an expert in the field of biomechanics.[1] In a written report prepared prior to trial, Dr. Gupta opined that

---

[1] As our Supreme Court noted in <u>Hisenaj v. Kuehner</u>, 194 N.J. 6, 13 n.5 (2008), "biomechanics at its simplest form is mechanics applied to biology." (citation and internal quotation marks omitted). "Mechanics focuses on forces, motions, and strengths or materials[.]" <u>Ibid.</u> (citation omitted). "When an outside force

"[t]he only rationale for any of [plaintiff's] alleged injuries would be that she was suffering from some form of pre-existing injury." However, plaintiff successfully moved to bar Dr. Gupta from presenting this conclusion at trial.

Thus, Dr. Gupta's trial testimony was limited to his opinion that "there was no force that was transferred from [plaintiff's] vehicle to her shoulder" as the result of defendant's car scraping against the side of plaintiff's vehicle. Prior to formulating this opinion, Dr. Gupta explained that he reviewed the police accident report, photographs of the two vehicles, plaintiff's and defendant's deposition testimony, and some of plaintiff's medical records. Critically, Dr. Gupta observed that plaintiff admitted "that none of her body parts came in contact with [the] interiors of [her] vehicle. So her left shoulder didn't come in contact with the interiors of the vehicle, so there was no force transfer from [defendant's] vehicle to [plaintiff's] vehicle to [plaintiff's] shoulder."

Dr. Gupta further explained that the driver's side door of plaintiff's car "has no energy absorbing materials, so even a minor force would cause a dent in there, but this force was less than that, that it didn't even cause that[.]" Putting

---

acts upon a living being, the biomechanical engineer applies concepts of mechanics to explain the physiological effects of that force upon a living being, and specifically how that force likely would affect the normal functions of [that being] or [its] organs." Ibid. (alteration in original) (citation omitted).

it another way, Dr. Gupta testified there was "no deformation of the . . . sheet metal of the [plaintiff's] door. There was . . . only minor paint transfer or scuff marks, but there was no actual deformation of the driver's door." Dr. Gupta also stated "[t]here was no perpendicular [component] of the force. The force that was imparted from [defendant's] vehicle to [plaintiff's] vehicle, . . . was longitudinal[;]" occurred only along the door; and applied no force upon plaintiff while she sat in the car.

Dr. Miller, who was accepted without objection as an expert in the field of orthopedic surgery, testified that he reviewed the relevant medical records and examined plaintiff in connection with this matter approximately two and a half years after the 2011 accident. He provided his initial diagnosis of plaintiff following this examination, which was that her cervical and lumbar spine sprains and injuries had "objectively resolved." Dr. Miller subsequently reviewed additional records provided by plaintiff, and his opinions remained unchanged. Further, Dr. Miller reviewed plaintiff's medical records regarding her 2009 accident and concluded that prior to the 2011 accident, plaintiff already had preexisting injuries to the cervical and lumbar spine.

Dr. Miller also testified regarding his review of plaintiff's left shoulder MRI films following the 2011 accident. Based on his review, he concluded that

A-4011-16T3

there was a preexisting injury to plaintiff's neck, back, and left shoulder. Although he testified that he did not review plaintiff's MRI films from the prior 2009 accident, Dr. Miller explained that he reviewed Dr. Meese's report and there was nothing significantly different between the findings on the MRI films. Finally, Dr. Miller testified that he reexamined plaintiff in August 2016, and concluded that she sustained no permanent injury as a result of the August 2011 accident.

After the completion of testimony, plaintiff attempted to introduce a police accident report concerning the 2009 accident, and hospital records concerning treatment plaintiff received following that accident. Because plaintiff did not have any witnesses available to authenticate these documents, Judge Padovano granted defendant's request to bar them from evidence.

Following its deliberations, the seven-member jury unanimously concluded that plaintiff failed to prove by a preponderance of the evidence that she sustained an injury proximately caused by the August 26, 2011 accident. Judge Padovano subsequently denied plaintiff's motions for a new trial and for additur. This appeal followed.

On appeal, plaintiff raises the following arguments:

POINT I

PLAINTIFF WAS BARRED FROM ALLOWING HER TREATING DOCTOR TO TESTIFY ON CAUSATION AND DISABILITY.

POINT II

DEFENDANT'S EXPERT DR. AMAN GUPTA WAS ALLOWED TO TESTIFY DESPITE OFFERING NET OPINIONS.

A.    THE REPORT OF AMAN GUPTA IDENTIFIES NO GENERALLY ACCEPTED SCIENTIFIC STUDIES OR PEER REVIEWED LITERATURE UPON WHICH HE HAS BASED HIS ANALYSES AND CONCLUSIONS IN THIS MATTER.

B.    THE OPINIONS EXPRESSED BY MR. GUPTA ARE BARE CONCLUSIONS WHICH ARE NOT SUPPORTED BY AVAILABLE OBJECTIVE EVIDENCE AND ARE THEREFORE "NET" OPINIONS.

C.    THE COURT SHOULD HAVE BARRED THE DEFENSE COUNSEL FROM ARGUING, EITHER DIRECTLY OR BY IMPLICATION, THAT THE SUBJECT ACCIDENT WAS NOT SIGNIFICANT ENOUGH TO CAUSE PLAINTIFF'S INJURIES AS COURTS OF THIS STATE HAVE EXPRESSLY REJECTED THE THEORIES OF DAMAGE-INJURY CORRELATION AS EXPRESSED IN THE BIOMEDICAL/BIOMECHANICAL FIELDS.

9

POINT III

DEFENDANT OFFERED EVIDENCE THAT PLAINTIFF WAS INVOLVED IN A PRIOR LAWSUIT CONTRARY TO THE NEW JERSEY SUPREME COURT [SIC].

POINT IV

PLAINTIFF WAS IMPROPERLY BARRED FROM ALLOWING EVIDENCE REGARDING THAT HER DELAY IN MEDICAL TREATMENT WAS DUE TO [ISSUES] WITH INSURANCE APPROVALS.

POINT V

DEFENDANT WAS IMPROPERLY ALLOWED TO TESTIFY ABOUT THE ACCIDENT AND INJURIES.

POINT VI

THE COURT UNILATERALLY MOVED PHOTOS INTO EVIDENCE THAT WERE NOT PROPERLY AUTHENTICATED.

POINT VII

THE COURT BARRED PLAINTIFF FROM INTRODUCING CERTIFIED POLICE REPORT FROM A PRIOR ACTION AS A BUSINESS RECORD.

POINT VIII

PLAINTIFF WAS PROHIBITED FROM INTRODUCING CERTIFIED HOSPITAL RECORDS.

POINT IX

DEFENDANT WAS IMPROPERLY ALLOWED TO INTRODUCE OPINION TESTIMONY AS TO THE CAUSE OF THE ACCIDENT FROM THE RESPONDING POLICE OFFICER WHO DID NOT WITNESS SAME.

POINT X

DEFENDANT WAS IMPROPERLY ALLOWED TO ADMIT TESTIMONY OF THEIR EXPERT DR. MILLER ON MRI FINDINGS.

POINT XI

THE TRIAL COURT IMPROPERLY DENIED PLAINTIFF'S MOTION FOR A NEW TRIAL.

POINT XII

THE TRIAL COURT IMPROPERLY DENIED PLAINTIFF'S APPLICATION FOR ADDITUR.

With regard to plaintiff's contentions concerning Judge Padovano's evidentiary rulings in Points I, II, and IV through X, our standard of review is well settled. "When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "Thus, we will reverse an evidentiary ruling only if it 'was so wide

[of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

A determination on the admissibility of expert evidence is likewise committed to the sound discretion of the trial court. Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). A trial court's grant or denial of a motion to preclude expert testimony is entitled to deference on appellate review. Ibid. As instructed by the Supreme Court, "we apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53.

Turning to plaintiff's argument in Point III that Judge Padovano should have declared a mistrial, we note that mistrials should only be granted "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." State v. Loyal, 164 N.J. 418, 436 (2000) (citation omitted). Accordingly, trial courts should exercise their discretion to grant a mistrial "with great reluctance, and only in cases of clear injustice. . . . Neither trial nor appellate courts may grant a new trial unless it clearly appears there was a miscarriage of justice." Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). Accordingly, we defer to a judge's decision not to declare a mistrial absent an abuse of discretion. Ibid.

A-4011-16T3

In addressing the arguments raised in Points XI and XII, we recognize the fundamental principle that jury trials are a bedrock part of our system of civil justice and that the factfinding functions of a jury deserve a high degree of respect and judicial deference. See, e.g., Caldwell v. Haynes, 136 N.J. 422, 432 (1994). In terms of its assessment of the relative strength of the proofs, a jury verdict is "impregnable unless so distorted and wrong, in the objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice." Doe v. Arts, 360 N.J. Super. 492, 502-03 (App. Div. 2003) (quoting Carrino v. Novotny, 78 N.J. 355, 360 (1979)).

Rule 4:49-1(a) provides that a trial judge shall grant a new trial if, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." Jury verdicts are thus "entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)); see also Boryszewski, 380 N.J. Super. at 391 (noting that

"[j]ury verdicts should be set aside in favor of new trials only with great reluctance, and only in cases of clear injustice").

In reviewing a trial judge's decision on a motion for a new trial, we view the evidence in a light most favorable to the party opposing the new trial motion. Caldwell, 136 N.J. at 432. Moreover, we give substantial deference to the trial judge, who observed the same witnesses as the jurors, and who developed a "feel of the case." See, e.g., Carrino, 78 N.J. at 361; Baxter, 74 N.J. at 597-98; Dolson v. Anastasia, 55 N.J. 2, 6 (1969).

Having considered plaintiff's contentions in light of these principles, we conclude that her arguments are without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). We therefore affirm substantially for the reasons stated by Judge Padovano in connection with each of his rulings. We add the following comments.

Contrary to plaintiff's argument in Point I, the judge properly concluded that Dr. Ermann could not testify as an expert at trial by giving an opinion concerning causation and permanency. As our Supreme Court made clear in Delvecchio v. Township of Bridgewater, "Rules 4:17-4(a), (e) and 4:10-2(d)(1) compel the service of reports by treating physicians who will testify at trial, in the event that these reports are requested in discovery." 224 N.J. 559, 582

(2016). The party proposing to use the treating physician as an expert must provide a report even if the treating physician did not prepare one. Id. at 582 n.8. Thus, unless a treating physician's expert report is turned over in discovery, the physician is barred from testifying as an expert. Id. at 579, 582; Stigliano by Stigliano v. Connaught Lab., Inc., 140 N.J. 305, 314 (1995).

Here, plaintiff failed to provide the defense with any report prepared by Dr. Ermann in advance of calling him as a witness at trial. In light of this, Judge Padovano did not abuse his discretion by barring the doctor from serving as an expert on the issue of permanency.[2] Therefore, we reject plaintiff's argument on this point.

In Point II, plaintiff cites to our decision in Suanez v. Egeland, 353 N.J. Super. 191 (App. Div. 2002), and argues that the judge erred by permitting Dr. Gupta to testify that no force transferred from defendant's car through plaintiff's car to plaintiff's shoulder during the parking lot incident in August 2011. However, Suanez is readily distinguishable from the case at hand.

In Suanez, the court concluded that the defendant failed to demonstrate there was a reliable scientific foundation for expert testimony by a bio-

---

[2] However, the judge did permit the doctor to testify about his diagnosis and treatment of plaintiff.

A-4011-16T3

mechanical engineer that "a low-impact automobile accident" cannot cause someone to suffer a herniated disc." Id. at 194. Here, however, Judge Padovano barred Dr. Gupta from opining that plaintiff's alleged injuries pre-existed the August 2011 incident. Therefore, unlike the expert in Suanez, Dr. Gupta did not render a medical opinion, and the testimony he provided was limited to his determination that the force with which defendant's car struck plaintiff's vehicle was not sufficiently strong to have been transferred through plaintiff's vehicle to plaintiff's shoulder.

As noted above, our Supreme Court has recognized that biomechanics concerns the study of "forces, motions, and strengths of materials," which is exactly what Dr. Gupta testified about at trial. Hisenaj, 194 N.J. at 13 n.5, 18-23 (holding that based on the record developed, expert testimony on biomechanics was reliable and permissible, and also distinguishing Suanez). The Court's holding in Hisenaj, therefore, supports Judge Padovano's conclusion that Dr. Gupta's testimony was sufficiently reliable to be admitted at trial. Rubanick v. Witco Chem. Corp., 125 N.J. 421, 432 (1991) (observing that the reliability of scientific evidence may be established by reference to persuasive judicial decisions which acknowledge such general acceptance of the expert

testimony). Indeed, Dr. Gupta's discussion of force and its effects was plainly within the bailiwick of his professional field.

Contrary to plaintiff's contention, Dr. Gupta grounded his opinion in the facts and data he obtained by reviewing the parties' depositions, plaintiff's medical records, and photographs of the two vehicles. Townsend, 221 N.J. at 55 (stating that an expert's testimony does not constitute a net opinion when the expert is "able to identify the factual bases for [his or her] conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable").

Dr. Gupta also relied upon his expertise in the field of biomechanics to determine that based on the parties' consistent description of the accident, and the lack of any meaningful damage to either of their vehicles, any force caused by defendant scraping against plaintiff's car did not transfer to plaintiff's shoulder. Plaintiff did not challenge Dr. Gupta's qualifications at trial. In addition, even if we could conclude that the judge erred by admitting this testimony, any such error would have been harmless because there was ample other evidence in the record, including plaintiff's admission that her body did not come into contact with anything inside the car, to support the jury's determination that the parking lot incident was not the proximate cause of

plaintiff's alleged injury. Under these circumstances, the judge did not abuse his discretion by permitting Dr. Gupta to testify at trial.

Turning to Point III, Judge Padovano properly exercised his discretion by denying plaintiff's motion for a mistrial after defense counsel made a brief reference to plaintiff's prior litigation concerning the 2009 accident. This reference occurred during defense counsel's cross-examination of Dr. Ermann. Plaintiff made an immediate objection, and the judge promptly gave a strong curative instruction to the jury that it was to disregard the attorney's reference to the prior lawsuit. The judge's curative instruction was swift and clear, and we must presume the jurors obeyed it. State v. Ross, 218 N.J. 130, 152 (2014). Therefore, a mistrial was not warranted.

Contrary to plaintiff's argument in Point IV, we discern no abuse of discretion in the judge's ruling barring plaintiff from claiming she did not seek treatment after the 2011 incident due to issues with her insurance. Judge Padovano concluded that this proposed testimony would be confusing to the jury and "too prejudicial to the defense" because there were numerous reasons why plaintiff's PIP carrier may have disallowed coverage or denied some treatment. Moreover, it appeared from her testimony that plaintiff's explanation for any gaps in her treatment concerned her pregnancies following the 2011 accident,

A-4011-16T3

when her doctors advised her not to continue treatment, rather than problems with insurance. Thus, plaintiff had the opportunity to fully address the issue.

There was nothing untoward in defendant being permitted to testify as to her version of the parking lot incident, her lack of injury, the fact that her air bag did not deploy, and the absence of notable damage to either vehicle. Indeed, defendant's testimony matched plaintiff's account in almost all respects. Therefore, we reject plaintiff's contention in Point V that the judge should have barred this testimony.

The judge also properly admitted the black and white photographs of plaintiff's car into evidence. Before doing so, the judge ensured that plaintiff had authenticated these exhibits at her deposition. We perceive no reason to disturb this reasoned determination and, therefore, plaintiff's argument in Point VI fails.

Turning to Points VII and VIII, Judge Padovano correctly barred plaintiff from introducing a 2009 police report and hospital records concerning plaintiff's treatment following that accident. While these documents were allegedly "certified," plaintiff did not present a witness to identify or authenticate them.

Contrary to plaintiff's contention in Point IX, Officer Wilson did not give improper expert opinion as to the cause of the accident, namely, that defendant's

car made contact with plaintiff's car as defendant was attempting to park. Clearly, the officer was merely relating what each party told him happened that day and, notably, neither party disagreed as to how the accident occurred.

With regard to Point X, we also detect no abuse of discretion in the judge's decision to permit Dr. Miller to testify concerning plaintiff's prior MRI films. Dr. Miller did not testify as to conclusions reached by a non-testifying radiologist, as was the case in James v. Ruiz, 440 N.J. Super. 45, 54-55 (App. Div. 2015), upon which plaintiff relies. Here, Dr. Miller was remarking on the conclusions reached by plaintiff's expert, Dr. Meese, who testified at trial through a video deposition and whose report Dr. Miller had previously reviewed. Thus, Dr. Miller's testimony was proper under N.J.R.E. 703 because he based his opinion on facts and data perceived by and made known to him at or before the hearing.

Finally, there is no reason to disturb Judge Padovano's decision denying plaintiff's motion for a new trial and for additur. Applying our deferential standard of review, there was ample evidence to support the jury's determination in favor of defendant. Contrary to plaintiff's contentions, the jury was free to reject her testimony, as well as that of Dr. Rothman, Dr. Meese, and Dr. Ermann. Therefore, plaintiff's arguments in Points XI and XII lack merit.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4011-16T3