**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0759-22

FRANCESCO MONGELLI,

    Plaintiff-Appellant,

v.

ROCCO V. MAZZA,
ANTOINETTE MAZZA,
EMANUEL SOTO, SOLANGE
PENA, BELLA N. DOMINGUEZ,
CHARMAINE BURTON, and
YAHAIRA GUTIERREZ,[1]

    Defendants-Respondents.

_____

Argued March 6, 2024 – Decided April 2, 2024

Before Judges Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0146-18.

Michele Labrada argued the cause for appellant (Law Offices of Karim Arzadi, attorneys; Michele Labrada, on the briefs).

---

[1] Yahaira Gutierrez was improperly pled as Yahaira Guiterrez.

Scott Barry Lipowitz argued the cause for respondent Yahaira Gutierrez (Goetz Schenker Blee & Wiederhorn, attorneys; Scott Barry Lipowitz, of counsel and on the brief).

Mario C. Colitti argued the cause for respondents Rocco V. Mazza and Antoinette Mazza (Law Office of Frank A. Viscomi, attorneys; Nicole Lynn Hollingsworth, of counsel and on the brief).

Stephen A. Rudolph argued the cause for respondents Solange Pena and Bella N. Dominguez (Rudolph Kayal & Almeida Counselors at Law, PA, attorneys; Stephen A. Rudolph, on the brief).

Nathan C. Orr argued the cause for respondent Charmaine Burton (Dyer & Peterson, PC, attorneys; Nathan C. Orr, on the brief).

PER CURIAM

This appeal follows a six-day civil trial after which the jury reached a verdict finding defendants Rocco V. Mazza and Solange Pena liable for damages and determining plaintiff Francesco Mongelli did not prove by a preponderance of the evidence he sustained a permanent injury as a result of any of the three automobile accidents that were litigated. Plaintiff appeals from the October 7, 2022 final judgment in favor of defendants Mazza, Antionette Mazza,[2] Emanuel

---

[2] Because defendants Rocco V. Mazza and Antoinette Mazza, share a surname, we refer to Antoinette Mazza by her first name for ease of reference. We intend no disrespect in doing so.

A-0759-22

Soto, Pena, and Bella N. Dominguez, arguing the trial court erred in: requiring plaintiff to establish causation; barring the testimony of Dr. Wael Elkholy and Dr. Konstantine Fotiou on the issue of causation through apportionment of his injuries to the three accidents at issue; barring evidence of plaintiff's medical bills from being presented to the jury; and granting summary judgment in favor of defendants Charmaine Burton and Yahaira Gutierrez. Because we discern no abuse of discretion in the trial court's evidential rulings on causation proofs, we affirm the October 7, 2022 final judgment based on the jury verdict. Our affirmance of the final judgment moots plaintiff's appeal of the two February 14, 2020 orders granting summary judgment to defendants Burton and Gutierrez.

I.

Plaintiff was involved in three motor vehicle accidents that occurred as follows: March 8, 2017 (the first accident), October 14, 2017 (the second accident), and April 27, 2018 (the third accident). We derive the following material facts relevant to disposition of this appeal from the trial record.

A. The First Accident – March 8, 2017

At the time of the first accident, plaintiff, who was twenty-two years old, was driving in a work-issued van to a warehouse during the course of his employment. While plaintiff was driving in the right-most lane, his vehicle was

struck by a car owned by Antionette and driven by Mazza. Plaintiff asserts the collision occurred because Mazza was attempting to make a left turn but failed to obey a stop sign and struck plaintiff's vehicle, which was continuing straight.

After the impact, plaintiff immediately "felt lots of throbbing pain and tingl[i]ness" radiating throughout his back, neck, shoulders, arms, fingers, legs, ankles, and feet. Plaintiff called emergency services, the police arrived on the scene, and an ambulance transported plaintiff to the hospital. In the emergency room, doctors took several x-rays and told plaintiff he had a fractured rib. Plaintiff was prescribed pain relief medication and released the same day.

Plaintiff began a course of chiropractic treatment with Dr. Fotiou beginning in September of 2017. Dr. Fotiou told plaintiff he was showing "positive signs of severe spasm" following the first accident.

## B. The Second Accident – October 14, 2017

The second accident occurred when plaintiff's vehicle was stationary at a stop sign. As plaintiff signaled to make a right turn, Soto began making a left turn onto the street where plaintiff was stopped. Plaintiff asserts the collision occurred because Soto was not in the lane designated for left-hand turns and instead crossed into the lane in which his car was stopped. Police were called

A-0759-22

to the scene, but there was no ambulance summoned and plaintiff was not taken to the hospital.

The day prior to the second accident, plaintiff saw Dr. Fotiou. However, because of the timing of the second accident, plaintiff had to wait several days until he received further treatment. By the time of his appointment, plaintiff was having "shooting" pain in his arms, hands, fingers, legs, feet, and back. Dr. Fotiou told plaintiff the range of motion in his cervical and lumbar areas was significantly reduced following the second accident.

Plaintiff underwent an MRI of the cervical and lumbar spine and commenced electrical stimulation therapy. Dr. Fotiou told plaintiff his MRI results were consistent with the pain he was experiencing.

In March of 2018, plaintiff began treatment with Dr. Elkholy, who was board-certified in pain management. Dr. Elkholy reviewed some of plaintiff's previous MRI studies and medical reports before determining plaintiff had herniations and bulging in several places throughout his lumbar and cervical spine. Plaintiff underwent a discectomy in the lumbar spine.

## C. The Third Accident – April 27, 2018

Approximately three weeks after plaintiff's discectomy, plaintiff was a passenger in a car owned by Dominguez and driven by Pena. When the vehicle

was approximately halfway through an intersection, it was struck by two cars, one driven by Burton, and the other by Gutierrez.

Plaintiff testified the severity of the third accident was such that he thought he was going to die. An ambulance arrived on the scene and transported plaintiff to the hospital. At the hospital, plaintiff was "on [his] knees" in pain, unable to lay down or turn over, and "crying with [his] father." Plaintiff was discharged from the hospital the same day.

Plaintiff felt his neck "snap" during the collision and he was not able to turn his head for the next several weeks. Due to the extreme pain, he began taking pain relief medication with greater frequency. Plaintiff continued receiving treatment from Dr. Fotiou until September 2018, when the doctor told plaintiff he had received the maximum benefit chiropractic care could provide and discharged him. Plaintiff continued to receive treatment from Dr. Elkholy.

### D. Pre-Trial Motions

On January 8, 2018, plaintiff filed a two-count complaint in the Law Division seeking damages from the first two accidents. On June 6, 2018, plaintiff amended his complaint to add a count seeking damages resulting from the third accident.

6

The discovery period concluded on January 29, 2020. On February 14, 2020, the trial court granted both Gutierrez and Burton's motion and cross-motion for partial summary judgment on liability, and dismissed plaintiff's claims against them with prejudice.

On February 24, 2022, over two years after the close of discovery, plaintiff served the remaining defendants with a January 2, 2018 Raritan Bay Medical Imaging report as to a lumbar spine MRI. On March 16, 2022, plaintiff served defendants with a February 10, 2020 report from the Precision Pain & Spine Institute.

Pena and Dominguez jointly filed a motion to bar plaintiff from using any medical records served after the January 29, 2020 discovery end date at the trial. Plaintiff opposed the motion and cross-moved to extend discovery.

On April 21, 2022, the trial court denied plaintiff's motions for reconsideration of the orders granting summary judgment to Burton and Gutierrez and denied plaintiff's cross-motion seeking a discovery extension. The trial court partially granted the motion to bar late discovery as to the February 10, 2020 Precision Pain & Spine Institute report served on March 16, 2022, after the discovery end date. Plaintiff's subsequent motion for reconsideration was denied.

## E.  Trial

The jury trial commenced on September 19, 2022.[3]  Defense counsel moved in limine to exclude any medical bills that were not submitted for payment to the worker's compensation carrier for plaintiff's employer, through plaintiff's personal injury protection (PIP) coverage, or provided to defendants during discovery.  When neither plaintiff's counsel nor defense counsel could identify what medical bills they had served or received, respectively, during the discovery period, the trial court instructed counsel for defendants to "come up with a draft order . . . as to what bills" they each received during discovery so the trial court could address admissibility.

Counsel for Mazza certified that plaintiff had not served any bills that were not already paid by plaintiff's worker's compensation carrier; counsel for Soto certified plaintiff served eight bills totaling $130,598.31; counsel for Pena certified plaintiff served one bill but it had been paid by plaintiff's PIP carrier.

---

[3]  The parties all stipulated to the dismissal of Dominguez from the matter. Therefore, trial proceeded only as to plaintiff's claims against Soto, Pena and both Mazza defendants.

A-0759-22

Plaintiff's counsel could not identify which bills were served on all defense counsel during discovery. Among other dialogue between the trial court and counsel, the court said to plaintiff's counsel:

> [I]f you have an objection [to the entry of orders submitted by defense counsel], I need to hear that on the record. Okay? So I don't believe that you're in a position now where you can provide an objection, so I'm going to grant those orders, subject to – I guess it would be an in limine motion to reconsider.

Plaintiff's counsel replied: "Sure." The trial court granted the motions in limine on this issue and ruled only the medical bills that had been provided to all defendants during discovery could be utilized at trial. However, the trial court stated if plaintiff could show the outstanding bills had been timely served on all defense counsel, it would reconsider the decision.

The trial court held a hearing pursuant to N.J.R.E. 104[4] to determine if Dr. Elkholy's opinion as to the apportionment of plaintiff's damages to each of the three accidents was admissible. Dr. Elkholy testified he was plaintiff's treating pain management doctor since March 5, 2018, following the first and second

---

[4]  A hearing pursuant to N.J.R.E. 104 (Rule 104 hearing) allows the court to determine the admissibility of evidence. See Kemp v. State, 174 N.J. 412, 427 (2002).

A-0759-22

accidents. During the hearing, Dr. Elkholy testified he had "been practicing for

[twenty-seven] years" and explained:

> I always believe that the first accident, it is very, very important because I consider it as a first insult.
>
> Our body is a very complex system of computers. When you get injured in the beginning, subsequently, it's very easy to get injured after this. So I always – the first accident, it is very important to me to put it around 50 [%], especially if the patient has no pain, no problem prior to this. . . .
>
> . . . .
>
> Now, the second accident came. All right. So I always believe the first accident – I always give it 50[%], or a little bit even more. But I understand if somebody argues with me it's not 50[%], it's 55, it's 60. It's okay, because it is very – it's like the pain scale, [zero to ten]. I think it's the most ridiculous thing, but we have to work with it.
>
> . . . .
>
> He had surgery after the second accident, and he had 70[%] pain relief. And he was going for recovery, and then got hit with the third accident. I cannot take from the first accident because the first accident is the . . . initial problem which happened and insult for his body. I have to take from the second accident. Yes, I can lower the first accident to 60, I can lower it a little bit to 50, but I cannot lower it below 50[%].
>
> . . . .

A-0759-22

So the third accident, I think, I blame it for the stopped recover[y] and going beyond what he had, beyond including the pain he has.

So I put 50[%] for the first because I think it is very, very important and it's the initial insult, and then the third accident caused a lot of problem, so I divided 10[%] and 40[%]. I understand if somebody argues with me okay, the second accident, we can do [20% and 30%], it is – I'm not going to disagree with it because again, that is the most difficult thing I always do when I have a patient who has multiple accidents. If it's one accident, it's easier, but he had three accidents. But I believe the first accident, 50[%] because it is initial insult and then after that, divided between second and third accident.

Dr. Elkholy did not testify to any particularized training or experience allocating causation to injuries sustained in multiple accidents involving a single individual. He also testified there is no consensus in the medical community as to this apportionment.

At the conclusion of the Rule 104 hearing, the trial court ruled plaintiff did not establish Dr. Elkholy had the expertise to opine as to apportionment and did not establish the methodology relied upon "regarding the percentage allocation related–or the–the percentage causal relationship to each accident and the injuries suffered by [plaintiff]." The trial court also found that Dr. Elkholy's testimony regarding causation as to damages from the first accident was barred because he did not review any records regarding the injuries plaintiff sustained.

11

During the trial, the jury heard testimony from plaintiff, Dr. Elkholy and Dr. Fotiou, as well as Mazza, Soto, and several other expert witnesses.[5] Plaintiff proffered Dr. Fotiou, plaintiff's treating chiropractor from September 2017 to September 2018, as a fact witness. Plaintiff did not attempt to qualify Dr. Fotiou as an expert, and told the trial court outside the presence of the jury that plaintiff "would like to bring in Dr. Fotiou just to testify that he did treat [plaintiff] . . . obviously, he has not rendered a report according to the case law, but he won't testify as to causation or anything else, just that he did treat [plaintiff]."

Dr. Fotiou testified that plaintiff "presented maybe with – with 30 to 40[%] reduced ranges of motions in the neck and back," which was "something that you . . . wouldn't expect on a [twenty-two-year-old man]." He continued to explain plaintiff "was positive on the right side [for] severe muscle spasms" which was "consistent with tearing the muscles and ligaments" along plaintiff's spine. Dr. Fotiou detailed the electrical stimulation therapy plaintiff received.

Dr. Fotiou testified he had seen plaintiff the day before the second accident. Plaintiff's counsel asked Dr. Fotiou if plaintiff had shown signs of improvement prior to the second accident. Dr. Fotiou replied:

> Yes. So now if we do a comparison from his – his reexamination that occurred [after the second accident],

_____

[5] The other expert witnesses's opinions are not relevant to the issues on appeal.

his ranges of motion significantly reduced in the cervical and lumbar spine. . . . [S]o he still had the symptoms of neck and back from the first accident. And now it's exacerbated from the second one.

So, the second accident, my differential diagnosis is an exacerbation where . . . aggravated an injury, plus the injury mostly got worse.

The trial court sustained the objection to Dr. Fotiou's testimony on exacerbation and aggravation relating to causation of the injuries and ruled:

Counsel, this is specifically what he was not going to testify to because he's not an expert. He–he's a fact witness. . . . You're going into actual testimony of causation. So I'm going to ask them to disregard his testimony.

When the sidebar ended, the court addressed the jury:

Okay. I'm going to sustain the objection. Members of the jury, you may have heard this witness testify about an aggravation or an exacerbation . . . of an injury. This – you've heard from witnesses. There are two general categories of witnesses, fact witnesses and expert witnesses. You've heard from expert witnesses, you've heard from fact witnesses. The doctor is here today as a fact witness. . . . [H]e's not qualified as an expert and can testify as to facts, for instance, the treatment of the patient. . . . [T]he jury will disregard any testimony he may have given as to causation or as to exacerbation or aggravation of injuries. . . . [H]e's been proffered to provide testimony as to the . . . course of treatment that "he provided to . . . plaintiff. Okay."

Is that satisfactory to . . . the parties?

13

In response to the trial court's question, plaintiff's counsel did not object and continued questioning Dr. Fotiou as to plaintiff's treatment following the second accident. Dr. Fotiou said plaintiff "presented in the office with severe neck and back pain, pain radiating into both shoulders, both legs which are similar to the findings from his first accident." Additionally, Dr. Fotiou said plaintiff "presented worse than his examination that happened" before the second accident.

Reviewing his notes in response to a question about the third accident, Dr. Fotiou testified that "also in his history, [plaintiff] had a discectomy in his lower back from the prior accident." Defense counsel objected. The trial court sustained the objection and instructed the jury as follows:

> Ladies and gentlemen of the jury, the witness has testified that there was surgery that was performed. The witness can certainly testify about the surgery, it occurred, but the jury will disregard any testimony as to why that surgery was performed which is sometimes called a causation. Okay.
>
> Counsel, is that satisfactory to all parties?

Plaintiff's counsel again did not object and continued questioning Dr. Fotiou as to plaintiff's treatment following the third accident. Dr. Fotiou testified plaintiff's "ranges of motion . . . decreased over 60[%] in the cervical lumbar spine" after the third accident. He provided plaintiff with a neck brace.

14

Prior to resting, plaintiff's counsel requested permission to recall Dr. Elkholy solely to testify as to medical bills. The trial court denied the application since plaintiff's counsel still had not provided defendants and the trial court with a proffer as to what bills had been served during the discovery period.

After plaintiff rested, counsel for Mazza moved for a directed verdict, based in part on the lack of evidence of permanency and causation. Counsel's argument proceeded as follows:

> THE COURT: Okay. So let's address the other issues. . . .
>
> [MAZZA'S COUNSEL]: Causation and permanency.
>
> [PLAINTIFF'S COUNSEL]: Your Honor, we know that [Dr. Fotiou] that just got off the stand . . . because he didn't provide his report, he couldn't testify as to causation and permanency, we know that. . . . [Dr.] Elkholy, through his own mouth, testified that he didn't see the records for the first accident . . . . And we were prohibited from having him indicate there was causation and permanency.
>
> THE COURT: Well, [what I'd] like to hear, though, is not what you couldn't present or what you'd like to have presented, but what you did present. At this stage there's a motion and I'd like you to address the facts that were presented.
>
> [PLAINTIFF'S COUNSEL]: Dr. Elkholy did testify that he . . . was not involved at the time of the first

15

accident. . . . He took into consideration, not the records because he didn't see them, but . . . the patient and what he told him as to his prior treatment. And, honestly, [j]udge, that's all we were able to obtain . . . .

The court considered counsels' arguments before denying the motion, explaining it was required to view the facts in the light most favorable to plaintiff.

> [T]here was an accident. I . . . don't know that there is enough on the record [to establish liability], but it's not for me to decide. I will take the evidence in the light most favorable to the plaintiff. And the plaintiff has testified that he was not at fault and that this other vehicle struck his vehicle. And given the standards that apply in this case, I think by the thinnest of margins, I'm going to deny that motion.
>
> As to the issue of causation and the issue of . . . permanency . . . the same standards would apply and the same principles would apply. I think this is a razor-thin margin by which there has been testimony provided by Dr. Elkholy and . . . Dr. Fotiou, indicating that there was an accident [and] that he treated [plaintiff when he] came in was following that first accident. I think that there's enough of an inference from that at this stage to permit this to go forward to the jury.
>
> Counsel, I'll be candid with you both as to causation and as to the permanency[,] I don't know that there's much beyond just the razor-thin inference at this stage [but] I'm going to deny the motion . . . .

The parties do not dispute that Dr. Fotiou did not issue a narrative report pursuant to Rules 4:17-4(a), (e) and 4:10-2(d)(1), his records do not contain any

16

opinion on causation, exacerbation or aggravation of prior injuries or permanency,[6] and no testimony regarding apportionment of plaintiff's injuries to the three accidents was proffered to the jury.

On September 27, 2022, the jury reached a verdict finding Mazza was liable for the first accident, Soto was not liable for the second accident, and Pena was liable for the third accident. The jury found plaintiff had not proven by a preponderance of the evidence that he sustained a permanent injury resulting from any of the three accidents and, therefore, did not award plaintiff any non-economic damages pursuant to the verbal threshold set forth at N.J.S.A. 39:6A-8(a). Plaintiff did not offer any evidence of economic damages at trial. As a result, on October 7, 2022, the trial court entered final judgment in favor of defendants based on the jury verdict.

On October 17, 2022, plaintiff filed a motion for a new trial arguing there was confusion among the parties as to the issue of the admissibility of medical bills resulting in the jury's verdict being against the weight of the evidence.

---

[6] Dr. Fotiou's records are not contained in the appendices.

Plaintiff withdrew the motion during oral argument on November 10, 2022. This appeal follows.

II.

On appeal, plaintiff argues the trial court abused its discretion by preventing evidence of outstanding medical bills from being presented to the jury and by barring the testimony of Drs. Elkholy and Fotiou as to the issues of causation including exacerbation, aggravation and apportionment of injuries to each of the three accidents. Plaintiff also posits the trial court erred by granting summary judgment to Gutierrez and Burton because there were outstanding issues of material fact.

Rulings as to the admissibility of evidence or testimony are governed by an abuse of discretion standard. Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). This standard also extends to "[t]he admission or exclusion of expert testimony" which is entrusted to "the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015); see In re Accutane Litig., 234 N.J. 340, 391 (2018) (noting we "must apply an abuse of discretion standard to a trial court's determination, after a full Rule 104 hearing, to exclude expert testimony on unreliability grounds"). Therefore, we "review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412

(2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). The de novo standard of review only governs where the trial court applies the incorrect legal standard. Hassan v. Williams, 467 N.J. Super. 190, 214 (App. Div. 2021). See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

III.

The remedy plaintiff seeks on appeal is to vacate the final judgment and grant a new trial. Plaintiff requested the same relief from the trial court but withdrew the request on the record at oral argument. We need not determine if plaintiff's prior withdrawal of the request for the same relief is fatal to his appeal. Instead, the issue is moot because we are unconvinced by plaintiff's substantive arguments and affirm the October 7, 2022 final judgment.

It is undisputed that for plaintiff to recover non-economic damages, such as compensation for pain and suffering, he was required to establish he sustained a permanent injury by a preponderance of the credible evidence pursuant to the statutory verbal threshold set forth at N.J.S.A.39:6A-8(a), as interpreted in our well-settled decisional law. The verbal threshold restricts an individual injured in an automobile accident from recovering non-economic damages unless they suffer bodily injury that results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a

permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. N.J.S.A. 39:6A-8(a).

Plaintiff asserts the jury verdict against Mazza and Pena on liability for the first and third accidents, respectively, coupled with the jury finding the injuries stemming from those accidents were not permanent shows that the jury was confused as a direct result of the trial court's incorrect evidence rulings. Plaintiff proffers two central arguments: the trial court improperly placed the burden on him to establish apportionment of damages to each accident; and the trial court improperly barred testimony that would have assisted the jury in making its determination as to apportionment of damages to each accident.

Plaintiff's argument that he improperly bore the burden of establishing apportionment of damages was not raised before the trial court. We consider issues raised for the first time on appeal only if plain error is established. R. 2:10-2.

The plain error standard under Rule 2:10-2 requires the appellate court to "determine whether any error . . . was 'of such a nature as to have been clearly capable of producing an unjust result.'" Toto v. Ensuar, 196 N.J. 134, 144 (2008) (quoting Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 464 (2000)); see also T.L. v. Goldberg, 238 N.J. 218, 232 (2019) ("To warrant reversal and

entitlement to a new trial, the plain error must have been clearly capable of producing an unjust result."). "If not, the error is deemed harmless and disregarded." Toto, 196 N.J. at 144. "Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)).

The trial court did not err in requiring plaintiff to establish causation through apportionment of injuries to each of the three accidents based upon our well-settled decisional law. "It is generally plaintiff's burden to prove not only that defendant was negligent, but also that defendant's negligence was a proximate cause of the injuries and damages suffered." O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am., 361 N.J. Super. 264, 274 (App. Div. 2003) (citing Paxton v. Misiuk, 34 N.J. 453, 463 (1961)). As a corollary, plaintiff must establish apportionment of damages proximately caused by defendant's wrongful acts as follows:

> Thus, plaintiff, generally, must apportion or relate damages to defendant's wrongful acts. If proofs establish that plaintiff's injuries, for example, pre-existed and were unconnected with defendant's negligence, then defendant is not responsible for the pre-existing injuries. A defendant should be responsible only for the value of the interest he [or she] destroyed.

21

. . . [T]he party in the best position to present evidence of non-aggravation or exacerbation is plaintiff. Plaintiffs should understand and appreciate whether and how a defendant's tort may have affected their prior or post injuries or conditions. The effect on plaintiff of defendant's tort is uniquely within plaintiff's knowledge. Thus, in a routine personal injury aggravation claim, we do not shift the burden to defendants and to prevail, plaintiffs must separate those damages caused by a particular defendant's negligence from any prior or post injuries or conditions. . . .

It is important to realize that when the burden is on plaintiff to apportion damages between particular defendants and prior or subsequent injuries or conditions, the result of failure to carry the burden may be dismissal of plaintiff's case.

[Id. at 274-75 (first alteration in original) (citations and quotations omitted).]

It is undisputed that in this case plaintiff claims aggravation and exacerbation of injuries sustained in each of the accidents. Under New Jersey law, "[n]ormally, the burden of proof for apportionment is on the plaintiff because, '[i]n the normal prior or post-personal injury aggravation claim, the party in the best position to present evidence of non-aggravation or exacerbation is plaintiff.'" Boryszewski v. Burke, 380 N.J. Super. 361, 376 (App. Div. 2005) (alteration in original) (quoting Reichert v. Vegholm, 366 N.J. Super. 209, 214 (App. Div. 2004)).

22

Although plaintiff argues generally he should not bear the burden of establishing the apportionment of injuries to each accident in this case, he presents no decisional law to support this argument. Plaintiff's reliance on Campione v. Soden, 150 N.J. 163, 184 (1997), is misplaced. In Campione, the Court set forth that "where there are collisions in rapid succession and no proofs permitting allocation of damages among the tortfeasors, both tortfeasors are to be held jointly and severally liable." Ibid. The plaintiff in Campione was first struck by another vehicle while driving and then was crushed between two vehicles immediately after exiting his car to inspect the damage. Id. at 168. Although plaintiff here was in multiple accidents, the accidents took place several months apart and he had the opportunity to be seen by medical professionals to document his injuries between each accident, since he sought differing medical treatment for the accidents. Accordingly, we find the Court's ruling in Campione inapplicable to this appeal.

Plaintiff does not dispute the trial court applied language closely tracking the Model Jury Charge to instruct the jury as to plaintiff's burden of establishing causation. "It is difficult to find that a charge that follows the Model Charge so closely constitutes plain error." Mogull, 162 N.J. at 466. We find no plain error

23

in the trial court's decision to require plaintiff bear the burden of establishing causation through apportionment of damages.

Next, we consider plaintiff's argument the trial court improperly barred expert testimony that would have assisted the jury in apportioning damages to each accident. Following a Rule 104 hearing, the trial court found Dr. Elkholy's testimony on injury apportionment to each accident was "essentially, a net opinion." We agree.

When determining the apportionment of injuries, qualified "expert testimony is needed [because] the factfinder would not be expected to have sufficient knowledge or experience and would have to speculate without the aid of expert testimony." 160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC, 466 N.J. Super. 600, 615 (App. Div. 2021) (quoting Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)). Not only must the expert be appropriately qualified to render the opinion but the prohibition on net opinions "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend, 221 N.J. at 53-54 (2015) (internal citations omitted). This principle requires "experts . . . be able to identify the factual bases for their conclusions, explain their methodology,

and demonstrate that both the factual bases and the methodology are scientifically reliable." <u>Landrigan v. Celotex Corp.</u>, 127 N.J. 404, 417 (1992).

We discern no abuse of discretion in the trial court's ruling that Dr. Elkholy was not qualified by training or experience to testify as to the apportionment of damages to each accident. There was no testimony at the <u>Rule</u> 104 hearing establishing any specific basis for a conclusion the doctor was qualified to render an apportionment opinion.

The trial court properly barred Dr. Elkholy's testimony on apportionment of plaintiff's injuries to each accident since it was not grounded in the facts of this case and was admittedly not supported by any methodology. At the <u>Rule</u> 104 hearing, Dr. Elkholy testified he allocates 50% of the overall damage he sees in patients with successive injuries to the first incident because "it is very important to [him]" and he "always believe[s] that the first accident, it is very, very important because [he] considers it as a first insult." The record supports the trial court's ruling that Dr. Elkholy could not testify to an apportionment of injuries to the first accident based on his own admission he reviewed no medical documents regarding plaintiff's injuries or medical condition prior to the second accident.

Dr. Elkholy's testimony as to the apportionment of damages to each accident was also equivocal and, therefore, speculative. "Damage awards may not be based on mere speculation." Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. Div. 1997). Dr. Elkholy's testimony was speculative and non-definitive, first apportioning 60% to the first accident, then 50%, and ranging between a 10% - 40% split for the latter two accidents, a 20% - 30% split and then later suggesting a general division between the second two accidents.

We give deference to decisions made by the trial court as to the admissibility of expert testimony after a Rule 104 hearing. In re Accutane Litig., 234 N.J. at 392. After reviewing the transcript of the Rule 104 hearing and the subsequent evidential rulings, we conclude the trial court's decision to bar Dr. Elkholy's testimony as to apportionment of damages was not an abuse of discretion.

Not only did Dr. Elkholy's testimony fail to establish apportionment of damages to each accident but the scope of Dr. Elkholy's proffered testimony also fails to establish the comparative analysis required in cases where, as here, exacerbation or aggravation based upon prior or subsequent injuries is alleged. When a claim is predicated on aggravation of pre-existing injuries, "a plaintiff will have to produce comparative-analysis evidence to establish a prima facie

26

[case]." Davidson v. Slater, 189 N.J. 166, 186 (2007). "Such evidence provides essential support for the pled theory of a plaintiff's cause of action and a plaintiff's failure to produce such evidence can result in a directed verdict for defendant." Ibid.

We concluded that the required comparative analysis must be proffered by plaintiff through expert testimony in Polk v. Daconceicao, 268 N.J. Super. 568, 575 (App. Div. 1993). In Polk, we determined that a physician must base their testimony as to a "diagnosis of aggravation of a pre-existing injury or condition . . . upon a comparative analysis of the plaintiff's residuals prior to the accident with the injuries suffered in the automobile accident at issue." Ibid. We determined the foundation for such a diagnosis "must encompass an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma." Ibid.

In Davidson, 189 N.J. at 185-86, the Court subsequently confirmed that a comparative analysis is required in cases where the plaintiff pleads aggravation and exacerbation of injuries in multiple accidents, setting forth as follows:

> When aggravation of a pre-existing injury is pled by a plaintiff, comparative medical evidence is necessary as part of a plaintiff's prima facie and concomitant verbal threshold demonstration in order to isolate the physician's diagnosis of the injury or injuries that are allegedly "permanent" as a result of the subject

27

accident. Causation is germane to the plaintiff's theory of aggravation of a pre-existing injury or new independent injury to an already injured body part. In such matters, a plaintiff generally bears the burden of production in respect of demonstrating that the accident was the proximate cause of the injury aggravation or new permanent injury to the previously injured body part. . . . Such evidence provides essential support for the pled theory of a plaintiff's cause of action and a plaintiff's failure to produce such evidence can result in a directed verdict for defendant.

[Ibid. (internal citations omitted).]

Plaintiff has proffered no evidence Dr. Elkholy based his opinion as to the aggravation of plaintiff's injuries on a review of plaintiff's medical records either before or after the first accident. Without the proper foundation for a comparative analysis, any expert testimony as to "the conclusion that [plaintiff's] condition has been aggravated must be deemed insufficient to overcome the [verbal] threshold" consistent with Polk, 268 N.J. Super. at 575.

Plaintiff also argues Dr. Fotiou's testimony as to the causation, aggravation and exacerbation of plaintiff's injuries should not have been barred. However, plaintiff offered his treating chiropractor as a fact witness rather than an expert and his counsel specified on the record that Dr. Fotiou would not opine as to causation. Dr. Fotiou was permitted to testify about the symptoms plaintiff had and the treatment he received, without objection. When Dr. Fotiou began

to opine on the aggravation of plaintiff's injuries, opposing counsel objected. After sustaining the objection, the trial court gave the jury a curative instruction to "disregard any testimony [Dr. Fotiou] may have given as to causation or as to exacerbation or aggravation of injuries" because as a fact witness Dr. Fotiou's testimony was "as to facts" including "the course of treatment . . . he provided to . . . plaintiff."

The trial court then asked if that jury instruction was "satisfactory to . . . the parties?" Plaintiff's counsel did not object or otherwise ask to expand the scope of Dr. Fotiou's testimony. Since there was no objection to the trial court, the instruction is reviewed under the plain error standard. R. 2:10-2.

As to causation, plaintiff must be able to overcome the "important limitation," Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 579 (2016), that circumscribes the testimony of a treating physician, not qualified as an expert, only to "the determination of the cause of" plaintiff's injuries as "an essential part of diagnosis and treatment," as set forth under Stigliano by Stigliano v. Connaught Laboratories, Inc., 140 N.J. 305, 314 (1995). The parties do not dispute that Dr. Fotiou's notes did not include any causation opinion, including an opinion on exacerbation or aggravation of injuries in the prior accidents. Nor

did Dr. Fotiou issue a report pursuant to Rules 4:17-4(a), (e) and 4:10-2(d)(1).[7]

Accordingly, plaintiff did not "disclose the substance of [Dr. Fotiou's] anticipated testimony, and the basis for that testimony" in treating notes produced during discovery, as required. Delvecchio, 224 N.J. at 579. Therefore, the trial court properly determined that Dr. Fotiou could not testify as to causation, exacerbation and aggravation "extending beyond the plaintiff's own diagnosis and treatment." Ibid.

Moreover, plaintiff's counsel represented on the record that Dr. Fotiou would not testify as to causation before the witness testimony proceeded. Based on our review of the trial transcript and prevailing law, we conclude plaintiff has not demonstrated the trial court's decision to bar treating physician Dr. Fotiou from testifying as to causation, including apportionment of injuries to each of the three accidents, was plain error.

Finally, we briefly address plaintiff's suggestion that the trial court made incongruous rulings in placing the burden on plaintiff to prove apportionment of damages while barring Dr. Elkholy and Dr. Fotiou from testifying on

---

[7] "A treating physician's report serves an important function; it provides the adversary with notice of the facts and opinions to which the physician will testify, and permits that party to assess the need for additional discovery and for medical testimony at trial." Delvecchio, 224 N.J. at 582-83.

causation. Although the complaint could have been dismissed on defendants' motion for involuntary dismissal at the conclusion of plaintiff's case based upon the lack of required expert proofs on causation, we see no inconsistency between the trial court's evidential decisions and the jury verdict. Plaintiff simply did not proffer a qualified expert witness to opine as to causation through the apportionment of injuries to each accident. Thus, the jury considered the issue without that evidence.

We also see no inconsistency in the jury determination of liability as to Mazza and Pena followed by the finding that plaintiff did not sustain a permanent injury causally related to the accidents involving those defendants. The jury found liability but, as to damages, found no permanent injury proximately caused by the first and third accidents.

IV.

"An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). Based on our determination that plaintiff failed to establish causation through apportionment of damages, plaintiff's appeal of the trial court's ruling barring plaintiff from introducing the

unpaid medical bills as economic damages is moot. Plaintiff cannot recover any damages, whether economic or non-economic, if causation through apportionment was not established. Davidson, 189 N.J. at 185.

Plaintiff's appeal of the two February 14, 2020 summary judgment orders dismissing the entirety of plaintiff's claims against Gutierrez and Burton with prejudice is also moot based on our affirmance of the October 7, 2022 final judgment. Plaintiff only alleges Gutierrez and Burton are liable for payment of damages as to the third accident. The jury found plaintiff failed to show a permanent injury resulting from the third accident as required to recover non-economic damages under the verbal threshold. Plaintiff did not offer any expert proofs of apportionment of damages. Therefore, plaintiff could not recover a judgment against Gutierrez and Burton based upon the trial proofs, even if they had not been dismissed from the case prior to trial on summary judgment.

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0759-22