**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1553-22

B.C.,

      Complainant-Appellant,

v.

ROBERT WOOD JOHNSON
BARNABAS HEALTH,

      Respondent-Respondent.

_____

Submitted March 17, 2025 – Decided October 10, 2025

Before Judges Gummer and Jacobs.

On appeal from the New Jersey Division on Civil Rights, Department of Law and Public Safety, Docket No. EM15HB-67274.

Clifford G. Stewart, attorney for appellant.

Apruzzese, McDermott, Mastro & Murphy, attorneys for respondent Robert Wood Johnson Barnabas Health (Mark J. Blunda, of counsel and on the brief; Catherine A. Morris, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Division on Civil Rights

(Donna Arons, Assistant Attorney General, of counsel; Douglas R. Praschak, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

Complainant B.C. appeals from a denial by the New Jersey Division on Civil Rights (the Division) of her motion to reconsider its prior determination finding "no probable cause" to support her allegations against respondent Robert Wood Johnson Barnabas Health (RWJBH).[1] B.C. contended RWJBH had discriminated against her in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. Because the Division's decision was not arbitrary, capricious, or unreasonable and was supported by the record, we affirm.

I.

On January 25, 2019, B.C. filed a verified complaint with the Division. Citing N.J.S.A. 10:5-12(a) and (d), she alleged RWJBH had violated the LAD by failing to provide a reasonable accommodation for her disability and

---

[1] We refer to complainant by her initials because the Division did so in its initial determination and denial of the reconsideration motion. Consistent with N.J.A.C. 13:4-2.10, the Division used her initials because it discussed her personal medical information in those decisions.

A-1553-22

terminating her employment in retaliation for complaining of "discriminatory comments" made by coworkers about her disability. According to B.C., she was "injured in a workplace incident" in December 2017 while employed by RWJBH as an apheresis technician.[2] She asserted that in January 2018, she had sought and received "a workplace accommodation of desk duty due to her disability."

According to B.C., she sent an email sometime around August 1, 2018, to Aleda Sadowski, an advanced practical nurse employed by RWJBH, asserting some coworkers had referred to her as a "half person" and had said she "should be home on disability, among other discriminatory comments." She alleged she was subsequently "subjected to an adverse employment action" when, on November 21, 2018, she was informed "she was discharged because the worker's compensation doctor deemed her disability as permanent and as such [r]espondent could no longer accommodate her." In the complaint, B.C. asserted her disability was not permanent, RWJBH was able but unwilling to accommodate her, and RWJBH had discharged her as a reprisal for her complaining about the statements allegedly made by coworkers.

---

[2] According to RWJBH, B.C. was employed by Robert Wood Johnson University Hospital, not RWJBH.

After B.C. filed the complaint, the Division conducted an investigation in which it interviewed B.C. and reviewed documents submitted by the parties. Based on that investigation, the Division made the following factual conclusions, which are supported by credible evidence in the record. After B.C. was injured during a blood drive in December 2017, she was "under restrictions that precluded her from performing the lifting, standing, traveling, and other physical demands that are necessary to perform the essential function of an [a]pheresis [t]echnician," which is "collecting blood." The apheresis-technician position "requires frequent walking; standing for long periods; occasional stretching, bending, and lifting of equipment and supplies; and the ability to transport coolers with blood products from various sites, including mobile blood drives around the state of New Jersey, to a laboratory."

In January 2018, while B.C. pursued treatment for her injury, RWJBH accommodated her restrictions "by assigning her to perform light clerical and receptionist tasks in the Blood Services Department." RWJBH temporarily reassigned her to the Pathology Department. RWJBH subsequently returned B.C. to the Blood Services Department, but because she had not yet recovered from her injury, she again was assigned light-duty work.

A-1553-22

On September 30, 2018, after learning she would be reassigned back to the Blood Services Department, B.C. sent an email to Sadowski, questioning the reassignment and asserting she had been assigned to the Pathology Department:

> due to the hostility that I was receiving from my coworkers in the blood service department because I was on modified duty. These included but [were] not limited to the following statements: 1. They do not want to work with a half of a person. 2. I should not be working and should be home on disability. 3. It was not fair for the staff to work hard and I was not able to help them.

On October 16, 2018, B.C. forwarded the September 30 email to Human Resources representative Shalini Harinarain, who responded the next day and requested a meeting. B.C. did not respond to that request. In its investigation, the Division found no evidence B.C. had made any internal complaints of harassment, other than the September 30 and October 16 emails, and no evidence to support her contention she was temporarily assigned to the Pathology Department because of any harassment complaints she had made.

On November 8, 2018, B.C.'s doctor[3] issued a report in which he discharged her from medical care for her December 2017 injury and concluded she had reached "MMI [maximum medical improvement]" for her injury and

___

[3] Records indicate the doctor had been assigned to treat B.C. in connection with her worker's compensation claim.

5

remained under several work restrictions. He stated B.C. should not lift or carry more than ten pounds and should "[a]void bending, twisting, lifting from [the] floor." Based on that report, RWJBH determined it could not return B.C. to her position as an apheresis technician because her physical restrictions permanently prevented her from performing the position's essential function of blood collection.

Human Resources representative Marygene Muller met with B.C. on November 23, 2018, to discuss her work restrictions and potential accommodations. B.C. signed an accommodation request form Muller had prepared, stating she could not drive ten or more miles, was limited in "bending, lifting, sitting for long periods of time," and was requesting a "position with limited movement (head and neck)." Muller provided B.C. with forms to request a leave of absence, a leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2653, and state disability benefits.

RWJBH considered B.C. to be on a leave of absence. In late 2018 and early 2019, Muller sent B.C. emails about job postings and encouraged her to contact her if she were interested in any of the positions. According to RWJBH, B.C. did not respond to those emails. B.C. told the Division she had expressed an interest in a clinical care technician position. The Division concluded B.C.

6

could not perform that job with her restrictions because its physical demands were similar or greater to those of the apheresis-technician position.

On May 6, 2021, RWJBH sent B.C. a letter, stating that, if she were not medically cleared to work or did not have an expected clearance date "in the immediate future," it would terminate her employment as of May 14, 2021. B.C. advised the Division she had not been able to work in any capacity since May 2020.

After concluding its investigation, the Division issued on June 6, 2022, a finding of no probable cause to support B.C.'s allegations RWJBH had violated the LAD. Referencing the November 8, 2018 doctor's report, the Division found:

> The LAD does not require an employer that has temporarily accommodated an employee with a light duty assignment to convert that assignment into a permanent position if the employee becomes permanently unable to perform the essential functions of the job she was hired to do. . . . In addition, the evidence shows that [r]espondent engaged with [c]omplainant in an interactive process to explore whether she could be transitioned into other available positions, and kept her on leave status for an extended period of time to facilitate such a transition, but [c]omplainant did not pursue any position that she could have performed with her restrictions. In this situation, the LAD did not obligate [r]espondent to maintain [c]omplainant on leave indefinitely.

The Division also concluded the evidence did not support a reasonable suspicion RWJBH had either subjected B.C. to a hostile work environment or had discharged her for reporting harassment. The Division determined B.C. had provided during its investigation "varying and inconsistent accounts of when she reported the alleged harassing comments from her coworkers and what response she received to her report." The Division found those accounts differed from the allegations she had made in the verified complaint. Citing B.C.'s failure to identify in her September 30 or October 16 emails the coworkers who allegedly made the statements and failure to respond to Harinarain's request for a meeting, the Division found B.C. had "precluded [r]espondent from investigating and taking remedial action on the issue."

The Division attributed RWJBH's decision to discontinue B.C.'s light-duty assignment in November 2018 to the finding in the November 8, 2018 doctor's report that she had reached maximum medical improvement and remained under several work restrictions. The Division concluded "[t]he evidence d[id] not suggest that [c]omplainant's report of alleged harassing comments by unspecified coworkers, which she did not pursue, played any role in" RWJBH's decision to discontinue B.C.'s light-duty assignment in November 2018 and decision to terminate her employment two-and-a-half years later.

8

Pursuant to N.J.A.C. 13:4-7.4(a), B.C. moved for reconsideration. On December 16, 2022, the Division denied the motion. The Division rejected B.C.'s arguments it had erred in finding RWJBH terminated her employment in May 2021 and not in November or December of 2018 after it had "fraudulently" advised her to apply for FMLA leave and failed to process her application for it, there was no evidence she had made any internal complaints of harassment other than the September 30, 2018 and October 16, 2018 emails, and the evidence did not create a reasonable suspicion that RWJBH had violated the LAD.

B.C. appeals from the denial of her reconsideration motion. She argues we should reverse the Division's decision because the Division erred in finding that her allegations regarding RWJBH's leave advice and termination of her employment were incorrect, her allegations of a hostile work environment were too varying and inconsistent to be viable, RWJBH was not responsible for investigating B.C.'s harassment complaint after she had failed to identify which coworkers made the statements and failed to respond to the Human Resources representative's request for a meeting, and RWJBH did not have an obligation to engage in the interactive process when B.C. showed no interest in any open position she could have performed. Unpersuaded by those arguments, we affirm.

II.

Our review of the Division's decision "is a limited one." Wojtkowiak v. N.J. Motor Vehicle Comm'n, 439 N.J. Super. 1, 13 (App. Div. 2015) (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988)). "The Division has 'expertise in recognizing acts of unlawful discrimination . . . .'" Id. at 12 (quoting Clowes, 109 N.J. at 588). Giving due regard to that expertise, we "survey the record to determine whether there is sufficient credible competent evidence in the record to support the [Division's] conclusions." Clowes, 109 N.J. at 587.

We must sustain the Division's decision "unless the agency's decision is shown to have been 'arbitrary, capricious, or unreasonable, or [ ] not supported by substantial credible evidence in the record as a whole.'" Wojtkowiak, 439 N.J. Super. at 13 (alteration in original) (quoting Barrick v. State, 218 N.J. 247, 259 (2014)). In determining whether an agency's decision was arbitrary, capricious, or unreasonable, we examine: (1) whether the agency's decision conforms with the law; (2) whether the decision is supported by substantial evidence in the record; and "(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." In re

Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).

"The Legislature established the Division to administer and enforce the LAD." Wojtkowiak, 439 N.J. Super. at 12 (citing N.J.S.A. 10:5-6). Under the LAD, an individual alleging unlawful discrimination may file suit in the Superior Court or seek relief in the Division, "taking advantage of the more expeditious administrative process." Ibid. (citing N.J.S.A. 10:5-13).

When an individual files an administrative complaint with the Division, the Division must conduct an investigation to determine if probable cause exists to support the allegations of discrimination. See N.J.S.A. 10:5-14; N.J.A.C. 13:4-10.2(a). For purposes of that analysis, "probable cause" means "a reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious person to believe that the [LAD] . . . has been violated . . . ." N.J.A.C. 13:4-10.2(b). If the Division determines probable cause exists, it will conduct a hearing on the merits of the complaint. N.J.A.C. 13:4-11.1(b). If the Division determines probable cause does not exist, however, that decision "is a final order which may be appealed to this court." Wojtkowiak, 439 N.J. Super. at 12 (citing N.J.S.A. 10:5-21; N.J.A.C. 13:4-10.2(c), (e)).

The LAD prohibits unlawful discrimination against an employee who "is or has been at any time disabled . . . unless the nature and extent of the disability reasonably precludes the performance of the particular employment." Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 572 (2016) (quoting N.J.S.A. 10:5-4.1); see also Bertolotti v. AutoZone, Inc., 132 F. Supp. 3d 590, 599 (D.N.J. 2015) (finding the LAD does not prohibit an employer from taking an adverse employment action against a disabled employee who is unable to perform the essential functions of his or her job).

"Disability discrimination under the LAD encompasses an employer's failure to comply with the duty to provide reasonable accommodation of the disability unless it causes undue hardship." Richter v. Oakland Bd. of Educ., 246 N.J. 507, 523 (2021) (citing N.J.A.C. 13:13-2.5(b)). Reasonable accommodation "refers to the duty of an employer to attempt to accommodate the physical disability of the employee, not to a duty on the part of the employer to acquiesce to the disabled employee's requests for certain benefits or remuneration." Raspa v. Office of Sheriff of City of Gloucester, 191 N.J. 323, 339 (2007). "[A]n employee must possess the bona fide occupational qualifications for the job position that employee seeks to occupy in order to

trigger an employer's obligation to reasonably accommodate the employee to the extent required by the LAD." Id. at 327.

"[T]o establish a failure-to-accommodate claim under the LAD," an employee must prove he or she "(1) qualifies as an individual with a disability . . . ; (2) is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without reasonable accommodations; and (3) that defendant failed to reasonably accommodate [his or her] disabilities." Richter, 246 N.J. at 526 (second alteration in original) (quoting Royster v. N.J. State Police, 227 N.J. 482, 500 (2017)) (internal quotation marks omitted). "[I]f an employer reasonably determines that [a disabled] employee 'cannot presently perform the job even with an accommodation, then the employer need not attempt reasonable accommodation.'" A.D.P v. ExxonMobil Research & Eng'g Co., 428 N.J. Super. 518, 543 (App. Div. 2012) (quoting Tynan v. Vicinage 13 of Superior Ct., 351 N.J. Super. 385, 397 (App. Div. 2002)).

Once an employee requests a reasonable accommodation for a disability, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Tynan, 351 N.J. Super. at 400 (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999)). Employers

must make a "good faith effort" to engage in an interactive accommodation process and to determine what appropriate accommodations may be necessary. Victor v. State, 203 N.J. 383, 424 (2010) (quoting Taylor, 184 F.3d at 317). "[A]n employee cannot refuse to cooperate with an employer's efforts to accommodate [the employee's] disability and then claim failure to accommodate." Potente v. County of Hudson, 187 N.J. 103, 111 (2006). When an employee alleges the employer failed to engage in the interactive process, the employee must prove:

> (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.
>
> [Tynan, 351 N.J. Super. at 400-01.]

"[A]n employer may reasonably limit light duty assignments" to temporarily-disabled employees. Raspa, 191 N.J. at 327. "The availability of light duty assignments for temporarily disabled employees does not give rise to any additional duty on the part of the employer to assign a permanently disabled employee indefinitely to an otherwise restricted light duty assignment." Ibid.;

14

see also Delanoy v. Twp. of Ocean, 462 N.J. Super. 78, 101 (App. Div. 2020) (same).

The LAD also protects against disability-based harassment. N.J.S.A. 10:5-12(a); see also Victor, 203 N.J. at 409 (recognizing "[a] hostile environment claim . . . as a variety of LAD discrimination"). To establish a hostile work environment claim under the LAD, an employee must prove "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." Ibid.

Under the severe-and-pervasive prong, the employee must prove "the harassing conduct, 'not its effect on the plaintiff or on the work environment,' was 'severe or pervasive.'" Griffin v. City of East Orange, 225 N.J. 400, 414 (2016) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 606 (1993)). Whether conduct is severe or pervasive is evaluated under the totality of the circumstances, assessing, "(1) 'the frequency of all the discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'" Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 196 (2008) (quoting Green v. Jersey City Bd. of Educ., 177 N.J.

434, 447 (2003)). The inquiry is whether a reasonable person in a plaintiff's position would consider the alleged discriminatory conduct "to be sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile or offensive working environment." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 178 (App. Div. 2005) (quoting Heitzman v. Monmouth Cnty., 321 N.J. Super. 133, 147 (App. Div. 1999)). The test is strictly objective. Godfrey, 196 N.J. at 197.

Finally, the LAD prohibits retaliation against an employee who engaged in protected activity, including opposing conduct that violates the LAD. Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 356 (2016) (citing N.J.S.A. 10:5-12(d)). To establish a retaliation claim under the LAD, an employee must prove he or she: (1) "engaged in a protected activity known by the employer"; (2) the employer subsequently unlawfully "retaliated against" the employee; and (3) the employee's "participation in the protected activity caused the retaliation." Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 332 (2010) (quoting Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 125 (2008)).

Having carefully reviewed the record before us, we perceive nothing arbitrary, capricious, or unreasonable in the Division's denial of B.C.'s motion to reconsider its finding of no probable cause. The Division correctly applied

16

the law in rendering its legal conclusions, and its factual findings, as detailed above, were supported by sufficient credible evidence in the record.

The evidence in the record demonstrates a doctor concluded B.C. had reached maximum medical improvement for her injuries and remained under several work restrictions. Those restrictions rendered her unable to perform the only job positions – apheresis technician and clinical care technician – she sought to occupy. The evidence in the record supports the Division's conclusion RWJBH had fulfilled any obligation it had to engage in an interactive accommodation process with B.C. Given the dearth of documentary evidence and B.C.'s "varying and inconsistent accounts" that differed from the allegations she made in the complaint, we have no reason to disturb the Division's conclusion the evidence did not support a reasonable suspicion RWJBH had either subjected her to a hostile work environment or discharged her for reporting harassment.

To the extent we have not expressly addressed any other arguments made by the parties, we have considered them and find they are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1553-22